IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA      )
                              )
        v.                    )        1:11CR85-5
                              )
WEN BIN CHEN                  )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of Defendant Wen Bin Chen ("Chen") to suppress evidence seized from his person by the Mebane (North Carolina) Police Department ("MPD") on January 21, 2011. (Doc. 54.) Chen contends that the evidence was seized pursuant to an unlawful frisk and search in violation of the Fourth Amendment to the United States Constitution. An evidentiary hearing was held on September 7, 2011. For the reasons set forth herein, the motion is DENIED.

## I.    BACKGROUND

At the September 7, 2011, hearing, Claude Wayne Carroll ("Carroll"), an asset protection associate employed by the Wal-Mart store located in Mebane, North Carolina, and Sergeant Paul Jackson Davis ("Davis") of the Mebane (North Carolina) Police Department ("MPD") testified. The court finds their testimony credible and finds the following facts.

On January 20, 2011, Carroll was working at the Mebane Wal-Mart store when he received a telephone call from a Denver,

Colorado, woman who reported that her credit card had been fraudulently used to make purchases at Carroll's store. Carroll immediately began an investigation by reviewing the store's "smart system," which maintains a permanent computerized record of every cash register transaction conducted in the store. He quickly determined that the woman's credit card had been used in his store to purchase American Express gift cards. Matching those purchases to the store's database of recorded images maintained from the store's 13 digital video recorders and 200 still motion cameras, Carroll was able to observe an Asian male and Asian female going from register to register conducting repeated purchases of American Express gift cards, which the store's records revealed were made in the names of Fan Lin and Qin Li. Carroll was able to follow the digital video footage backwards to retrace the steps of these two individuals. As he reversed the video, he observed the suspects exit from a "bluish gray minivan" parked in the store's lot. Carroll printed still photos from the images and reported the matter to the MPD, who came out and made a report.

The next day, as Carroll was walking the store floor, he observed the same two Asian suspects he had identified the day earlier. They were selecting "large amounts of the same kind of gift card" and purchasing them at the registers. As before, the

suspects were paying with a credit card and immediately getting back in line at another register to buy more gift cards. Carroll notified the MPD.

When the MPD arrived in the store's parking lot, the male and female suspects were at cash register number 9 purchasing more gift cards. Sergeant Davis entered the store, and Carroll advised him of the ongoing activity. Sergeant Davis proceeded to register 9, and after he observed the suspects complete the transaction, detained them. Carroll escorted a third suspect, whom he had observed similarly purchasing gift cards at the jewelry counter, to Sgt. Davis, and all suspects were taken to the store's loss prevention office.

There, Carroll advised Sgt. Davis that these were the same individuals from the prior day, noted that he had made a report to the MPD of the activity, and briefed him on what had occurred on both days. Sergeant Davis noted that the individuals were using credit cards in the names of Fan Lin and Qin Li to obtain the gift cards - which was confirmed by the store's "smart system" information – even though these were not their true names. Numerous credit cards, American Express gift cards, and at least one false identification were found on the suspects.

Carroll and Sgt. Davis also reviewed the store's digital video footage and live camera feed of the parking lot. The

historical video showed a blue/gray minivan arrive at the Wal-Mart's grocery entrance that day, drop off the three suspects, and park in a space in the parking lot. Carroll told Sgt. Davis this was the same van shown in the video the day before. In examining the store's live camera feed, Carroll and Sgt. Davis could see that the van was still parked in the same space. (Government Ex. 1 (photograph of the minivan parked in the lot).)

After securing the three suspects with another MPD officer, Carroll and Sgt. Davis exited the store and approached the minivan from its front side. Sgt. Davis observed an Asian male – Chen - in the driver's seat apparently talking on a cell phone. When Sgt. Davis approached, Chen got off the phone "real quick," dropped his head, and appeared as if he "was peering across the top of a pair of glasses" watching Sgt. Davis. Sergeant Davis motioned for him to put his hands up so he could see them, as Sgt. Davis explained, for his safety because he was unable to determine what was in Chen's hands. Sergeant Davis opened the driver's door and spoke to Chen. But Chen did not respond in English, and it appeared to Sgt. Davis that Chen did not understand English.

"For my safety and due to the language barrier," Sgt. Davis stated, "I wanted him out of the vehicle, [and] motioned for him

to get out of the vehicle so I could check him to make sure he didn't have any weapons." Sergeant Davis candidly admits that up to this point he did not have any specific reason to believe that Chen was armed and dangerous or posed a threat to his safety. As Chen exited, Sgt. Davis observed a bulge in his right front pocket. Sergeant Davis asked Chen whether he had any weapons on him, but Chen did not appear to understand. For officer safety, Sgt. Davis testified, he proceeded to pat down the driver's pockets. Upon feeling the bulge, Sgt. Davis immediately determined that it "felt to be the size and shape of credit cards," which he believed to be evidence of the ongoing crime. He reached in the pocket "to see what they were" and observed 16 American Express gift cards.

Chen was placed under arrest, and his van was searched. In a soft bag by the driver's seat officers located a wallet with more credit cards and a Chinese passport and identification.

Chen has been charged in a superseding indictment with the following crimes: conspiracy to use and possess counterfeit access devices in violation of 18 U.S.C. §§ 1029(a)(1) & (a)(3) and to possess device making equipment in violation of 18 U.S.C. §§ 1029(a)(4); identity theft in violation of 18 U.S.C. § 1028A(a)(1); possession of fifteen or more access devices in violation of 18 U.S.C. §§ 1029(a)(3), 1029(c)(1) and 2; and

possession of the identification of another during and in relation to a felony in violation of 18 U.S.C. § 1028A(a)(1).

Chen now moves to suppress the evidence seized from his person pursuant to the Fourth Amendment to the United States Constitution. He raises two arguments in support of his motion. First, he contends that Sgt. Davis's warrantless search of his pocket violated the "stop and frisk" doctrine first articulated in Terry v. Ohio, 392 U.S. 1 (1968). According to Chen, Sgt. Davis lacked the requisite reasonable and articulable suspicion that he was armed and dangerous prior to conducting a Terry stop and frisk and, once it became apparent that the bulge in his pocket was not a weapon, Sgt. Davis exceeded the scope of any authorized search. Second, he argues that Sgt. Davis lacked the probable cause necessary to justify his arrest prior to conducting the search. The Government contends that Sgt. Davis's search of Chen was reasonable under Terry and, even if not, was reasonable as a search incident to a lawful arrest based on probable cause that Chen was involved in the ongoing fraud.

## II. ANALYSIS

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted in the absence of a

6

search warrant are unreasonable under the Fourth Amendment unless they meet one of the specifically recognized exceptions. Minnesota v. Dickerson, 508 U.S. 336, 343-44 (1993) (citing Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984) (per curiam)). Here, the facts raise two such exceptions: the Terry stop and frisk; and search incident to arrest. Because Sgt. Davis conducted his search in the absence of a warrant, the Government bears the burden of proving its validity. United States v. Vickers, 540 F.3d 356, 360 (5th Cir. 2008).

A. **Terry "Stop and Frisk"**

The Fourth Amendment authorizes the warrantless search of an individual where a police officer has reasonable, articulable suspicion that "[1] criminal activity may be afoot and [2] that the persons with whom he is dealing may be armed and presently dangerous." Terry, 392 U.S. at 30; see also United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009). Although "an officer's reliance on a mere 'hunch' is insufficient to justify a stop," the evidence "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arizu, 534 U.S. 266, 274 (2002) (quoting Terry, 392 U.S. at 27). Only after an officer makes reasonable determinations concerning ongoing criminality and a suspect's potential to be armed may he

7

conduct a limited search of that individual.  United States v. Burton, 228 F.3d 524, 528 (4th Cir. 2000).  Because the sole justification for a Terry search is officer safety, Terry, 392 U.S. at 25-26, the scope of any search is limited to a pat-down for weapons.  Adams v. Williams, 407 U.S. 143, 146 (1972) ("The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.").

Chen concedes that Sgt. Davis had a reasonable suspicion that criminal activity was afoot but not that he (Chen) was armed and dangerous at the time of the search.  Alternatively, he argues, even if a frisk was justified for officer safety, Sgt. Davis exceeded its authorized scope by seizing the credit cards from his pocket.

### 1.  Propriety of the Search

Chen contends that as Sgt. Davis approached the minivan, there was no objective reason to believe that the driver posed any danger to police officers.  According to Chen, the suspects detained inside the Wal-Mart store had cooperated with store officials and the investigating officers, were not armed at the time of their detention, and did not exhibit threatening behavior toward the officers at any time.  Moreover, he contends, he readily complied with all of the officer's

requests. Absent a showing that Sgt. Davis reasonably believed him to be armed and dangerous at the time of the search, Chen argues, the search was unlawful under Terry.

It is well settled that a police officer must have an objectively reasonable basis for believing that a suspect may be armed and dangerous before frisking him for weapons. Terry, 392 U.S. at 30. Though Chen does not contend otherwise, it is also settled that a stopped driver may be directed to exit his vehicle as a matter of course during an investigatory stop in the interest of officer safety. Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977) (explaining that the "inconvenience" to a driver of exiting a vehicle "cannot prevail when balanced against legitimate concerns for the officer's safety," including the possibility that the investigating officer could be the victim of an assault); United States v. Patterson, 648 F.2d 625, 633-34 (9th Cir. 1981) (holding that "[o]rdering [the driver] from the car was also a reasonable precaution" in the context of investigating a narcotics deal). This is so because "the officer is at a disadvantage both when he approaches the occupant and when he tries to question him through a car window" insofar as he cannot scrutinize the suspect's movements and there is a "greater opportunity for the suspect in a car to pull out a hidden weapon." United States v. White, 648 F.2d 29, 31,

36-37 (D.C. Cir. 1981) (permitting officers to order suspected narcotics traffickers out of parked vehicle for further questioning based on officer safety). If a suspect who is ordered out of his vehicle displays a "bulge" in his clothing that could be a weapon, the officer is permitted to conduct a pat-down for safety. Mimms, 434 U.S. at 111-12 (finding that "any man of 'reasonable caution' would likely have conducted the 'pat down'" because "[t]he bulge in the jacket permitted the officer to conclude that [the defendant] was armed and thus posed a serious and present danger to the safety of the officer"); United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996) (finding that officer's observation of a "bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation").

Here, the court finds that Sgt. Davis was within the bounds of Terry when he conducted the investigatory stop. Sgt. Davis was aware that a crime was ongoing, and he had ample reason to believe that the minivan Chen was driving was connected to it. He permissibly ordered Chen to step out of the vehicle for his safety. As Chen complied, Sgt. Davis observed a "bulge" in Chen's pocket. Not being able to readily identify the source of the bulge and concerned that it might be a weapon, Sgt. Davis

10

conducted a pat-down. In light of the ongoing crime and Chen's suspected involvement, the presence of the bulge in Chen's pocket gave rise to a reasonable belief that a Chen may be armed and dangerous and thus justified the pat-down for weapons under Mimms and Baker.

Contrary to Chen's contention, the lack of any overt threatening behavior and even his compliance do not vitiate law enforcement's right to conduct a protective pat-down once the suspicious bulge was observed. See United States v. Proctor, 148 F.3d 39, 41-42 (1st Cir. 1998) (permitting an officer who observed a bulge in the suspect's jacket pocket to conduct a protective pat-down, even though the suspect "complied fully with [the officer's] instructions" prior to the search); United States v. Roggeman, 279 F.3d 573, 575-76, 584 (8th Cir. 2002) (finding no Fourth Amendment violation where an officer's protective pat-down occurred upon observing a bulge in the suspect's pocket when the suspect was stopped merely for operating a vehicle with a faulty muffler and cooperated with the officer's request to exit his vehicle). This remains so even though Sgt. Davis conceded upon cross-examination that up until the point he saw the bulge he had no specific reason to believe Chen was armed. United States v. Michelletti, 13 F.3d 838, 842 (5th Cir. 1994) (finding frisk reasonable and, in doing

so, rejecting officer's subjective beliefs upon "clever cross-examination" that before the pat-down he had no specific reason to believe the defendant, who did not remove his hand from his front pocket as he approached the officer, was armed).

Thus, upon observing the bulge in Chen's pocket, it was objectively reasonable for Sgt. Davis to believe that Chen could be armed and to conduct a protective frisk.[1]  Baker, 78 F.3d at 137.

### 2.  Scope of the Search

Chen contends that even if an objective reason to believe he was potentially armed and dangerous existed at the time of the pat-down, Sgt. Davis exceeded the scope of any permissible search because Terry limits a search for weapons or immediately apparent contraband.  Sgt. Davis's seizure of the credit cards from his pocket, Chen contends, violated the Fourth Amendment because it was impossible for the officer to have known that the cards were, in fact, gift cards purchased with fraudulent credit cards (as opposed to any other type of card).

---

[1]  Chen contends that Sgt. Davis's statement that he conducted the frisk not only for officer safety but also "due to the language barrier" demonstrates that the officer lacked reasonable suspicion for the frisk.  It is unnecessary to consider any "language barrier" as a ground in light of the other facts present, but the court acknowledges that even a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.  Florida v. Bostick, 501 U.S. 429, 437 (1991).  Cf. United States v. Miranda-Garcia, 23 F.3d 1331, 1335 (8th Cir. 1994) (reversing denial of motion to suppress where suspect's use of Spanish not shown to be relevant to support reasonable suspicion).

Under Terry, once an officer has a reasonable, articulable suspicion that the detained individual may be armed, he may search that individual for weapons. Terry, 392 U.S. at 24. If a weapon is detected, it may be seized and introduced against the suspect in a criminal trial. Id. at 30. During a permissible pat-down, however, an officer may also seize any object "whose contour or mass makes its identity immediately apparent" as contraband, whether threatening or non-threatening in nature, under the "plain view" - or its corollary, the "plain feel" – doctrine.[2] Dickerson, 508 U.S. at 373, 375-76; United States v. Hernandez-Mendez, 626 F.3d 203, 213 (4th Cir. 2010), cert. denied, 131 S. Ct. 1833 (2011). As the Supreme Court noted, "Terry itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure." Dickerson, 508 U.S. at 376. However, before any such item may be seized, an officer must have probable cause to believe it is contraband. Id.

Under the "plain view" or "plain feel" doctrine, courts have found probable cause to seize seemingly innocuous items

---

[2] In Dickerson, the Court explained that under the "plain view" doctrine "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." 508 U.S. at 375. The court further explained that the "plain view" doctrine is analogous "to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search." Id.

when determined to be contraband in the context of the crime being investigated. In United States v. Bruce, 109 F.3d 323 (7th Cir. 1997), for example, the United States Court of Appeals for the Seventh Circuit concluded that shotgun ammunition, while not contraband in and of itself, "assume[d] an incriminating nature in connection with the search for items such as assault rifles." Id. at 328-29 (upholding denial of defendant's motion to suppress the ammunition under plain view doctrine). Similarly, in United States v. Cervantes, 19 F.3d 1151 (7th Cir. 1994), the Seventh Circuit held that "although a wad of cash is not in itself a suspicious object," when the police have good reason to believe the cash on a defendant's person was just obtained in exchange for illegal drugs, it is "suspicious." Id. at 1153 (finding that the police had probable cause to seize the wad of cash under the "plain view" doctrine). Accord State v. Washington, 396 N.W.2d 156, 162 (Wis. 1986), abrogated on other grounds by State v. Swanson, 475 N.W.2d 148 (Wis. 1991) (finding that during a Terry stop police officers lawfully seized wristwatches from the occupant of a vehicle implicated in a jewelry store burglary where the wristwatches were known to have been stolen from the store); 4 Wayne R. LaFave, Search and Seizure § 9.6(d) n.251 (4th ed. 2004) (collecting cases).

In the present case, Sgt. Davis had probable cause to believe that the bundle of cards in Chen's pocket was contraband. Although Chen rightly points out that gift cards are not suspicious in themselves, the large bundle of cards in his pocket gave rise to probable cause to believe they were contraband in the context of the ongoing credit-card fraud inside the immediately adjacent Wal-Mart. <u>Proctor</u>, 148 F.3d at 43 (upholding seizure of glassine bag of marijuana from defendant's pocket under "plain feel" doctrine, finding it "important to note that the officer was conducting the frisk at a residence where he had just delivered five pounds of marijuana"). Sergeant Davis had just observed – both on video and in part in person – the three accomplices who had earlier exited the minivan use counterfeit credit cards to repeatedly purchase American Express gift cards inside the store over the course of two days. The store's security video also confirmed that two suspects had left Wal-Mart the day before in a blue/gray minivan, carrying their numerous, fraudulently-acquired gift cards. He also knew that those same individuals had arrived at the Wal-Mart in the same blue/gray minivan and that the minivan and its driver had waited while the fraud was conducted. Thus, when Sgt. Davis immediately recognized the items in Chen's pocket as a bundle of either gift or credit

cards, he had probable cause to believe they were contraband in the context of his investigation and to seize them.  See United States v. Raymond, 152 F.3d 309, 313 (4th Cir. 1998) (permitting an officer to seize a package of "crack" cocaine under the "plain feel" doctrine).

Chen argues that Sgt. Davis would not have known whether the cards were credit cards, gift cards, or both.  But this does not matter here, because false credit cards, false identifications, and gift cards (as illicit proceeds) were all involved in the fraudulent scheme.  Cf. United States v. Swann, 149 F.3d 271, 275 n.1 (4th Cir. 1998) (affirming denial of motion to suppress seizure of stolen credit cards under Terry but declining to do so under the "plain feel doctrine" because the credit cards' identity was not immediately apparent when frisked in the defendant's sock).

**B.  Search Incident to a Lawful Arrest**

The Government contends that, alternatively, the seizure should be sustained as a proper search conducted incident to arrest.  Chen argues that before approaching the minivan, Sgt. Davis never had any contact with him or identified him as its driver based on the Wal-Mart security cameras.  Thus, he concludes, there was no reasonable basis to have believed he was

16

connected to, or even aware of, the credit card fraud scheme ongoing inside the store.

The Fourth Amendment permits the warrantless search of an individual where the search is "incident to a lawful arrest." Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009). Searches incident to arrest are permitted to preserve evidence of criminal activity and ensure officer safety during an arrest. United States v. Robinson, 414 U.S. 218, 230-34 (1973).

Before making a warrantless arrest, a police officer must have probable cause to believe that an individual is engaged in criminal activity. See Virginia v. Moore, 553 U.S. 164, 177 (2008) ("'A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment.'" (quoting Robinson, 414 U.S. at 235)). Yet once an officer determines that there is probable cause to make an arrest, he is permitted to search the individual without separate probable cause. Id.

### 1. Probable Cause Supporting Chen's Arrest

Although probable cause is "'incapable of precise definition or quantification into percentages,'" United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)), it is judged by an objective standard, United States v. Johnson, 599 F.3d 339,

17

346 (4th Cir.), cert. denied, 131 S. Ct. 358 (2010). "[P]robable cause is a flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). It requires an arresting officer to have more than a "bare suspicion," but "less than evidence necessary to convict." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). At its core, probable cause to justify an arrest exists when a reasonably prudent police officer has sufficient knowledge to believe that a suspect has committed or is committing a criminal offense. See id. (citing Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). Courts may consider the "totality of the circumstances" within the arresting officer's knowledge when determining whether the officer had probable cause to justify an arrest. United States v. White, 549 F.3d 946, 949 (4th Cir. 2008); cf. United States v. Massenburg, No. 10-4209, 2011 WL 3559897, at *10 n.4 (4th Cir. Aug. 15, 2011) (reversing denial of motion to suppress and noting that one officer's observation of a bulge in the suspect's pocket cannot be imputed to the arresting officer under the collective knowledge doctrine absent his having been made aware of the same).

Under the totality of the circumstances known to Sgt. Davis as he approached the minivan, probable cause existed to arrest the driver. Sergeant Davis's investigation revealed that the

same blue/gray minivan had dropped off the same three suspects on two different days in front of the Mebane Wal-Mart. See United States v. Chapman, 954 F.2d 1352, 1357 (7th Cir. 1992) (finding probable cause to arrest the driver of a vehicle where "the description of the getaway vehicle [implicated in a bank robbery] closely matched that of [defendant's truck]").[3] He had also observed two of the suspects as they committed the crimes on January 21 and observed video footage of those suspects buying large quantities of American Express gift cards using multiple false credit cards and false identifications on January 20 and 21. Sergeant Davis also learned that the same blue/gray minivan was parked in the Wal-Mart parking lot as it waited for the suspects inside the store. See United States v. Wright, 374 F. App'x 386, 391 (4th Cir. 2010) (holding that officers had probable cause to arrest a suspect who, among other things, "waited down the block" from the site of a drug delivery and prepared to drive away from the site with another conspirator), cert. denied, 131 S. Ct. 1468 (2011).[4] Finally, as Sgt. Davis approached the minivan he observed Chen end his phone call, drop

---

[3] In Chapman, the description of the get-away vehicle also indicated that two men were in the rear of the truck. 954 F.2d at 1356. In addition, the driver of the vehicle initially refused to stop when police officers signaled for him to pull over. Id.

[4] Decisions not selected for publication by the Fourth Circuit are cited as persuasive, but not binding, authority.

his head as if to shield his face from view, and appear to watch the officer (as if peering across eyeglasses) to see if the approaching officer was looking for him – activities that, in light of the surrounding circumstances, added to his suspicion.[5] United States v. Mayo, 361 F.3d 802, 806 (4th Cir. 2004) (noting relevancy of evasive behavior). Based on the totality of the circumstances, Sgt. Davis had probable cause to believe that Chen, the driver of the minivan, was engaged in the ongoing criminal activity.

When a police officer determines that there is probable cause to believe that a suspect is engaged in criminal activity, he may conduct an arrest without a warrant. Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."). Indeed, no warrant is required if officers have probable cause and the arrest takes place in a public place. United States v. Tate, 648 F.2d 939, 943 (4th Cir. 1981). Thus, once Sgt. Davis determined that the blue/gray minivan and its driver were connected to the attempted credit

---

[5] Chen seeks to distinguish Swann, 149 F.3d at 276-77 (where there was excessive nervousness) by pointing to the absence of nervousness here. While nervousness gave additional reasons to uphold the search in Swann, its absence here does not require a contrary holding.

card fraud inside Wal-Mart, Sgt. Davis had probable cause to arrest Chen.

## 2. Search was Incident to Lawful Arrest

A police officer who has probable cause to arrest a suspect may conduct a search incident to that arrest. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (upholding a search conducted incident to a suspect's arrest). While a police officer may not rely on the fruits of the search to demonstrate probable cause for an arrest, Sibron v. New York, 392 U.S. 40, 63 (1968), any evidence uncovered during a permissible search is admissible against the suspect in a criminal trial, United States v. Taylor, 857 F.2d 210, 214-15 (4th Cir. 1988) (upholding the introduction of evidence seized from defendant's person where police had probable cause for an arrest).

Chen, of course, was not formally under arrest at the time he was searched. There is no requirement, however, that a formal arrest take place before the search so long as probable cause to arrest existed at the time of the search. United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991) (citing Rawlings, 448 U.S. at 111). A search is permissible if it is "closely related in time to that arrest." Id. Here, Sgt. Davis testified that he placed Chen in "custody" immediately after he discovered the American Express gift cards in Chen's pockets and

formally arrested him within 20 to 30 minutes. (Defendant's Ex. 1.) Thus, Sgt. Davis's search was "closely related in time" to Chen's arrest, and the evidence seized from Chen incident to his arrest is admissible against him at trial.[6]

## III. CONCLUSION

Under the totality of the circumstances, the Government has carried its burden of demonstrating that Sgt. Davis properly seized the gift cards from Chen's person during his investigation. Under _Terry_, Sgt. Davis had a reasonable suspicion to believe that criminal activity was afoot, he was justified in conducting a pat-down search of Chen's clothing for weapons when he observed the "bulge" in Chen's pocket, and he had probable cause to believe that the bundle of cards he felt was contraband in the context of his investigation. Independently, Sgt. Davis had probable cause to arrest Chen and, thus, conduct a search of his person incident thereto. Therefore, for the reasons set forth herein,

---

[6] Chen does not challenge the subsequent search of his vehicle and the evidence discovered therein. There is no doubt the search of the vehicle was permissible. In _Arizona v. Gant_, 556 U.S. 332, 129 S. Ct. 1710, 1721 (2009), the Supreme Court made clear that police officers may "conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." For the reasons noted _supra_, Sgt. Davis certainly had probable cause to believe that evidence of credit card fraud was present in the vehicle.

IT IS ORDERED that Defendant Wen Bin Chen's motion to suppress (Doc. 54) is DENIED.

/s/ Thomas D. Schroeder
United States District Judge

September 20, 2011